### John M. Grover vs. Inhabitants of Pembroke.

Under an article in a warrant for a town meeting "to see if the town will vote to appro-
priate a sum of money to aid the furnishing and equipment of volunteer military com-
panies to be enlisted in this town and vicinity, and to take any necessary measures for
the support of the families of those who are ordered to service, and act on anything re-
lating to the above objects," the town may vote to pay a certain sum monthly to each
citizen of the town who shall enlist in the military service.

If prior to *St.* 1861, *c.* 222, a town had voted that a certain sum monthly should be paid to
each citizen of the town who should enlist in the military service of the state with the
intention of serving in the army of the United States, if called upon, a citizen who so
enlisted under that vote may, under that statute, maintain an action against the town to
recover such pay for a time not exceeding ninety days from his enlistment.

The *St.* of 1863, *c.* 38, ratifying contracts of towns to pay bounties to soldiers, does not
operate to revive a contract which had become extinct under *St.* 1861, *c.* 222.

Receiving state aid will not prevent a soldier from recovering any sum to which he may be
entitled under the votes of the town in which he enlisted.

CONTRACT brought by an inhabitant of Pembroke to recover
bounty money voted by that town to enlisted soldiers. Judg-
ment was rendered for the defendants in the superior court, upon
agreed facts which are sufficiently stated in the opinion ; and
the plaintiff appealed to this court.

*J. K. Hayward*, for the plaintiff.

*B. W. Harris*, for the defendants.

GRAY, J. The vote of the town of Pembroke of May 3d
1861, upon which the plaintiff relies to maintain this action, was
" that the sum of twenty-five dollars per month, including the
army pay, be paid to each citizen of the town of Pembroke who
shall enlist in the military service of the State of Massachusetts
with the intention of serving in the army of the United States,
if called upon during the present year, that the said amounts
shall be paid monthly from the time they are accepted by the
governor, and that the surplus revenue now held by the town
in trust for the United States be appropriated to defray the ex-
penditure." The defendants contend that this vote was not
justified by the third article in the warrant calling the meeting
at which the vote was passed. But the records of the meeting
show that that article had been taken up and disposed of, leav-
ing open the second, in which the purposes stated were, " to see

if the town will vote to appropriate a sum of money to aid the furnishing and equipment of volunteer military companies to be enlisted in this town and vicinity, and to take any necessary measures for the support of the families of those who are ordered to service, and act on anything relating to the above objects."

The first question to be considered therefore is, whether the vote above quoted was within this article in the warrant. And applying the liberal rules of interpretation which govern documents of this nature, we are of opinion that it was. A warrant issued by town officers for a town meeting is not to be construed with the same strictness as a power of attorney or a penal statute. If it gives intelligible notice of the subjects to be acted upon, it is sufficient. *Torrey* v. *Millbury*, 21 Pick. 68. *Haven* v. *Lowell*, 5 Met. 40, 41. Gen. Sts. *c.* 18, § 22. " Furnishing volunteer military companies" would be quite as generally understood to include the raising of men, as to be limited to the arming and equipping of men when raised. If " furnishing" meant no more than that, it might as well have been omitted, for " equipments " would have sufficed without it. And to " act on anything relating to the above objects " might reasonably be held to include obtaining the soldiers themselves, as well as fitting them out and providing for their families.

On the 6th of May 1861, the plaintiff and sixty-two others presented a petition to the governor, pursuant to the Gen. Sts. *c.* 13, § 14, in which they agreed to be enrolled into a company of volunteer militia to be raised in this and neighboring towns, subject to his orders, and to serve for the period of five years unless sooner discharged agreeably to law, adding, " and this enlistment we enter into with the full understanding that we are liable to be ordered into active service under the government of the United States." The governor thereupon on the 7th of May authorized the petitioners to organize themselves into a company of infantry, and ordered an immediate election of officers, which was had the same day, and a military company organized according to the then laws of the Commonwealth.

The plaintiff thus " enlisted in the military service of the State of Massachusetts with the intention of serving in the

army of the United States," and accepted the offer contained in the vote of the town, and made in form a complete contract with the town. This contract was indeed utterly void, because beyond the power of the town to make in the absence of legislation. *Tyler* v. *Pomeroy*, 8 Allen, 503, and cases cited. But it is not doubted that the legislature might make it good. *Fowler* v. *Selectmen of Danvers*, 8 Allen, 83, 84. *Freeland* v. *Hastings*, 10 Allen, 570. And on the 23d of May 1861 an act was passed, to take immediate effect, authorizing towns and cities to raise money " to defray any expense already incurred, or to carry out and fulfil any contract heretofore made with or in behalf of any of its inhabitants who may have enlisted as members of the volunteer militia, or who have been or may be called into the service of the United States;" providing that " all contracts now subsisting between any town or city and any member of the volunteer militia, as such, shall terminate in ninety days from the date of such contract, or the date of enlistment if subsequent to such contract and previous to the passage of this act;" and further declaring that " no compensation, in addition to the regular pay of the army or navy of the United States, other than that mentioned in the act, shall be given by any town or city to any of their inhabitants who as volunteers or otherwise shall enlist in the service of the United States; but all contracts made with any members of the volunteer militia who have been mustered into the service of the United States for the term of three months shall be valid during such term; and no pay shall hereafter be allowed by any town or city for the expense of drilling." *St.* 1861, *c.* 222, §§ 2, 3. By this statute the contract, previously subsisting in form only between the plaintiff and the town, was made valid for ninety days from the date of his enlistment as a member of the volunteer militia. That date was the 7th of May 1861, when this company was accepted by the governor and duly organized Gen. Sts. *c.* 13, §§ 14, 17, 18.

By the terms of the vote of the town, any of its citizens enlisting in the military service of the Commonwealth with the intention of serving in the army of the United States were to

be paid monthly from the time of their acceptance by the governor twenty-five dollars, "including the army pay." It is manifest therefore that the plaintiff's muster into the service of the United States on the 15th of June 1861, as a member of the Seventh Regiment of Volunteers, did not terminate his right to claim the bounty of the town, but only diminished the amount which he should thereafter recover of the town by the amount of the army pay received by him monthly from the United States.

The same statute of 1861, which ratified the contract of the town with the plaintiff, expressly declared that it should terminate in ninety days from the date of enlistment into the volunteer militia. The *St.* of 1863, *c.* 38, by which the contracts of towns to pay bounties for soldiers furnished by them are ratified and made valid, cannot be construed to revive contracts which had been put an end to by express statute, and had not since been renewed by the town. The contract originally made between the plaintiff and the town having been ratified and continued in force for a limited time, and then terminated, by the *St.* of 1861, there is no ground for implying a new contract beyond that time in face of the express prohibition of that statute, and there was therefore no form of contract between the plaintiff and the town, to which the *St.* of 1863 could apply.

The state aid which the plaintiff's family have received from the treasury of the town under the statutes of the Commonwealth is in no sense a payment of or substitute for the sum which the town had promised to pay to him individually. And it has not been suggested by the town that the bounty received by the plaintiff from the United States is to be considered as " army pay" under the vote of the town.

The result is therefore that the plaintiff is entitled to recover at the rate of $25 a month for ninety days from the 7th of May 1861, deducting the monthly pay received by him from the United States after the 15th of June 1861, and within that period.

*Judgment for the plaintiff accordingly.*